Ruffin, Chief Justice.
 

 It is apparent, both from the terms of the will and from the answers, that it was the purpose of the testator, that the legatee Simmons should not hold the negroes beneficially as property. The bounty intended was to the slaves themselves, and not to the nominal donee. The negroes are to have the profits of their own labour. Simmons is made the legal owner, not that he should be master, but that the negroes might have a Protector- The case is not, therefore, to be distinguished from those of
 
 Huckaby
 
 v.
 
 Jones, 2
 
 Hawks, 120, and
 
 Stevens
 
 v.
 
 Ely,
 
 1 Dev. Eq. Ca. 493, and others upon this subject, unless the application of the rule be prevented by the residence of the legatee • in Virginia, and the law of that state.
 

 Upon the pleadings the disposition must be deemed to be good in that law, as it is so stated in the answers; and the cause is set for hearing on the bill and answers. But we think clearly, that cannot affect the construction of a
 
 *115
 
 disposition of personalty in a will made here by a person residing here. The capacity to make the will is derived from our law, and the validity of its provisions is to be ascertained from the same source. By it every trust for emancipation, and every direction in a will to that end, whether , ... , , , the emancipation is to be absolute or qualified, is illegal and void, and the trust results in equity to those who' would be entitled, if no such disposition had been attempted. The defendants must therefore surrender the slaves and account for the profits. .
 

 if the lex domicilii
 
 of the testator avoids'a kgacyjit18 valid by J^teetIie
 

 Ordinarily cUimfbX tween w ill'll ofte decided in Court 01 Equity.
 

 A general gift of theresidue, ineffectually whether °f’ they fail by legality.^
 

 The next of kin of the testatrix and her residuary legatees are all plaintiffs, and submit the question of their respective rights to these slaves to the Court. That mode of bringing forward conflicting claims is not approved of, and in doubtful cases would not be allowed, as there •ii , i • rr* i , _ might be much difficulty as to the mode of reconsidering the -decree as between different plaintiffs. But as no objection is made by the other parties in this case, and as we deem the law to be clear, the Court will proceed to decide between those two classes of claimants. The Court is of opinion, that the next of kin are not, but that the residuary legatees are entitled to the slaves. The bequest to Sorrey is of “ one-fourth of the money arising from my estate after paying debts and legaciesand that to Maria Gisborne is of the other “ three-fourths of the nett proceeds of my estate after paying all just debts and legacies.” Of an express general gift of the residue the rule is well settled, that it comprehends all the personalty which is not otherwise effectually disposed of by the will, whether it be acquired after making of the will, or whether it fall in by the lapse of a legacy, or by the particular gift of the thing being 'illegal and void.
 
 Durour
 
 v.
 
 Motteux,
 
 1 Ves. Sr. 321.
 
 Cambridge
 
 v.
 
 Rous,
 
 8 Ves. 14.
 
 Dawson
 
 v.
 
 Clarke,
 
 15 Ves. 410.
 
 Bland
 
 v.
 
 Lamb,
 
 2 Jac. & Walk. 399. In the last case Lord Eldon says, that
 
 to
 
 take a case out of this general rule, very special words are necessary, showing the intent
 
 to be
 
 clear, that particular parts of the estate should not pass under the residuary clause. The rule itself is not founded upon the actual intention of the testator to include every thing; for often, nay, gene
 
 *116
 
 rally, there is probably a contrary intention, as every man must be supposed to consider each particular disposition of his will valid, and to expect it to take effect. But the rule is an inference from the presumed general intention not to die intestate as to any thing, when there is a gift of the general residue. Doubtless it may be restricted by the special wording of the will. If the residue given is partial, that is, of a particular fund, the rule has no application. So, where it is clear from the residuary clause itself or other parts of the will, that the testator had in fact a contrary intention, namely, that the residue should not be general, and that things given away or which the will professed to give away, should not fall into the residue.
 

 Unless it is clear upon the will, that the intention was differei
 
 L
 

 And merely charging the residue with the payment of legacies will not, of itself, prevent those which fail for any cause from sinking into it.
 

 We think, however, that
 
 effect
 
 cannot be given to the words here used, “ after debts and legacies paid,” notwithstanding the previous attempt to give away the slaves specifically. Those words in truth express nothing more than is implied in the term “ residue,” by itself, which imports what is remaining after paying, debts and taking out legacies antecedently given. If these words would exclude every thing from the residue which the will professes to give particularly, the same might be contended and would be true in every case, and the general rule would cease to exist. Sir Widliam GRant, in
 
 Cambridge
 
 v.
 
 Rous,
 
 after laying down the will in the form in which it is now generally approved and quoted, says, that there can be no distinction nor inference against its application founded on such words as “ then,” or “ after legacies before given;” for they mean nothing more than “ residue” does.
 

 For these reasons, the Court deems the point so clear, that little would have been said on it, were it not for an expression reported of Lord Camden upon this subject, which has been adopted and made a ground of distinction in cases of this sort by respectable text writers. Mr. Roper, in his Treatise on Legacies, 2 Yol. 457, states, that when it appears the testator intended the residuary legatee should have only what remained
 
 after payment of legacies,
 
 he will not be entitled to any benefit from lapse;
 
 *117
 
 and he cites and states the cases of
 
 Davers
 
 v.
 
 Dewes,
 
 3 P. Wms. 40, and
 
 Attorney General
 
 v.
 
 Johnston,
 
 Ambl. 577, as the authorities for that position. We think he states his principles too loosely, and that the cases do not support him to the full extent. It is true-Lord Camden uses the expression imputed to him,x but not- in the sense supposed.
 

 In the first case,
 
 Davers
 
 v.
 
 Dewes,
 
 the testator, after disposing specifically of parts of his real and personal estate, declared an intention to dispose thereafter by codicil of certain plate and furniture, and then gave away the residue of his personal estate not disposed of, or reserved to be diposed of. He died without making any further disposition of the plate and furniture, although he made codicils. Upon a question as. to those articles between the residuary legatee and next of kin, it was decreed for the latter. The express reservation in the will of those goods for future disposition prevented that will from operating on them at all. It was a plain declaration that they should not thereby pass to any body; and amounted to taking them out of the residue therein bequeathed. Upon the authority of that case,-Lord Camden decided
 
 Attorney-General
 
 v.
 
 Johnstone,
 
 upon the peculiar phraseology of the will and the evident intent. The testator, after many legacies (including one of twenty thousand pounds to a charity, which was void by the statutes of mortmain,) gave to a “ Hospital in Hamburg one hundred pounds, that is, if there remain enough of my personal estate to satisfy it,
 
 hut if not, or in case-there remain hut little, then the one
 
 hundred pounds
 
 to the
 
 hospital shall not be paid, and the small remainder of my personal estate shall be left to my executor to dispose of in favour of charity schools in Hamburg as he thinks proper. So it is likewise my will, that if my personal estate shall sufficiently reach towards satisfying all the legacies by me bequeathed and above mentioned, my executor shall also dispose of the remainder in favour of charity schools in Hamburg, in manner before expressed.” Upon these last general words it was contended for the schools, that they were entitled to the twenty thousand pounds which
 
 *118
 
 remained in the event undisposed of. But Lord Camden decreed for the next of kin, upon the ground, that upon the whole will the residue was intended not to be a general one but a particular small one. He says, indeed, that “ the intention appears strong in the case to confine the residue to what should remain of his money
 
 after the other legacies paid.”
 
 But it is plain the chancellor did not mean to lay down any new rule, nor did he found the decree, barely upon the words “ towards satisfying all the legacies by me bequeathedfor he treats it as within the case of
 
 Davers
 
 v.
 
 Dewes,
 
 in which he considered the testator had said, that none of the legacies should fall into the residue; and he remarks minutely upon all the other provisions of the will before him, to show what particular residue the testator intended for
 
 the
 
 charity schools. Those provisions were sufficient of themselves to exclude the schools, without the words about satisfying other legacies. The legacy to them was contingent and uncertain in amount, but to be small, at all events. In the first place, schools were to be substituted for the hospital, if the small sum of one hundred pounds could not be raised out of the remainder of the personal estate. If it could be raised, then the small remainder, whatever it might be, was to go to the schools. It was therefore doubtful in the testator’s mind, and contemplated by him as being doubtful, and so expressed by him, whether the residue which he intended to give would amount to one hundred pounds. It might, and a remainder be over, but if there should be, although the exact amount was uncertain, it was certainly to be “
 
 the small remainder.”
 
 Hence Lord Camden decided for the next of kin, because he considered, from all these provisions, that a specific and not a general residue was given to the schools. When he uses the words “ after the other legacies paid,” it is not in their strict technical sense, and with the intention to give to those words generally a meaning which will control and limit a residuary bequest; but his meaning is to be understood, that in that case, and upon the whole will, the residue given is that residue which remains after all the sums of money bequeathed particularly should first and
 
 *119
 
 at all events have been raised; and that the testator strongly expresses the intention that it should not be more. The terms “ legacies paid” are used somewhat inaccurately for the sums mentioned in the will as the amounts of the legacies ; for there can be no payment of a legacy, as such, when it has lapsed. But where the residue is given as that which shall remain after so much money shall have been first taken out of the whole estate, that residue is a particular one, and will not by any subsequent events embrace more than that which was originally residue at the making of the will and upon its face.
 

 The Court cannot, therefore, upon the words “after payment of legacies,” unaided by any restrictive context, say, that the x-esiduary claims do not include the slaves which the testatrix attempted ineffectually to emancipate, and must decree accordingly, against the next of kin.
 

 Pee. Cükiam. Direct an account.