LIGHTFOOT et al. v. POINDEXTER et al. (No. 5805.)

(Court of Civil Appeals of Texas. Austin. Nov. 21, 1917. Rehearing Denied Jan. 9, 1918.)

1. WILLS ⇐859—LAPSED LEGACY—RESIDUARY CLAUSE.

A bequest lapsing by the legatee dying before testatrix, in the absence of statute, falls into the residuary clause of "all of the remainder of my property"; a contrary intention not being clearly expressed.

2. CHARITIES ⇐22(1) — BEQUESTS — UNCERTAINTY OF OBJECT.

A bequest for erection of a "tabernacle" or "coliseum" in a public park is not void for uncertainty, though the words have different technical meanings, the will naming persons to decide on plans according to which it shall be built, and that it shall be suitable for the innocent pleasures and comforts of people resorting to the park, and designed to make the park attractive and minister to enjoyment of those resorting to it.

3. PERPETUITIES ⇐8(7)—CHARITABLE GIFT.

A bequest for erection of a building in a public park is not void under the provision of the Constitution against perpetuities, being a charitable gift.

4. CHARITIES ⇐17—BEQUEST—UNCERTAINTY OF AMOUNT.

A bequest for erection of a chapel to be erected by the executor "at a cost of not less than $25,000, nor more than $35,000, it being my idea that it should cost about $30,000, but I give my executor the right to vary from this sum within the above limits," is not void for uncertainty of the amount.

5. CHARITIES ⇐20(2)—GIFTS OF CHAPEL TO COLLEGE—CAPACITY TO OWN AND CONTROL.

A gift to a college for erection of a chapel is not void on the ground that the college, being incorporated for educational purposes, cannot own and control a building used for purpose of conducting religious services.

6. WILLS ⇐489(2)—IDENTITY OF LEGATEE—PAROL EVIDENCE.

Parol evidence is admissible to identify a legatee, when under the terms of the will there is ambiguity thereon.

7. WILLS ⇐489(2) — IDENTITY OF LEGATEE — PAROL EVIDENCE.

Parol evidence is admissible to determine whether one charter is an amendment of a previous charter relative to whether one corporation is the successor of another corporation, to clear a doubt as to identity of the beneficiary of a charitable legacy.

8. CORPORATIONS ⇐14(1) — DUAL PURPOSE — CHARTER.

A corporation is not organized and conducted for two purposes, religious and educational, contrary to the law, its charter plainly stating it is organized for educational purposes, though providing it shall be under control of a specified religious denomination.

---

⇐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

9. CHARITIES ⊕⟶12—PERPETUITIES ⊕⟶8(7)—NATURE OF CORPORATION.

The main purpose of a corporation or institution as organized and conducted being educational, it is a charity, so that a bequest to it is not within the inhibition against perpetuities, though under its charter it has stock, by and from the holders of which its directors are elected.

10. CHARITIES ⊕⟶47 — CHARITABLE TRUST — FAILURE OF TRUSTEE.

A bequest for the education of the youth of a certain county, the manner in which it shall be carried out being specifically stated, being a charity, the college to which it is given is merely trustee of a charitable trust, and if, for any reason, the college cannot take as trustee, the trust will not fail, but equity will take charge of it and administer it under a trustee appointed by it.

Appeal from District Court, Brown County; Jno. W. Goodwin, Judge.

Suit by William Poindexter, executor, against B. C. Lightfoot and others. From the judgment, certain defendants appeal. Affirmed.

J. E. Clarke, of Cleburne, for appellants T. W. and A. J. Lightfoot. S. C. Padelford, of Cleburne, for other appellants. C. L. McCartney, Mark McGee, and I. J. Rice, all of Brownwood, for appellees.

Statement.

SANFORD, Special Judge. This suit was instituted in the district court of Brown county, Tex., by William Poindexter, as executor and trustee of the estate of Mrs. Mattie R. Coggin, deceased, in the nature of a bill of interpleader, the petition setting forth the various items or provisions of the will of the said Mrs. Coggin, including a number of special bequests and a residuary clause naming Daniel Baker College, of Brownwood, Tex., as residuary legatee, and interpleading the various persons named in the will as legatees, including the appellants herein, to wit, B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot. The main purpose of the bill was to secure a construction of the will by the court, and one of the minor purposes was to have the court determine whether certain of the legatees, to wit, the appellants T. W. Lightfoot and A. J. Lightfoot, had forfeited the bequests to them under the provisions of the will. The petition sets forth the will in full, a statement of the provisions sufficient for our purposes being contained in the trial court's findings of fact hereinafter copied. There is a codicil to the will, but it is unnecessary to set out any portion thereof except paragraph 4, as follows:

"I have not made any provision in this will for my beloved sister-in-law, Mrs. Bettie L. Tabor, and I desire to here state that this is not due to any lack of affection for her or appreciation of her friendship, but knowing she is so comfortably fixed in this life, and that her years will be few at best, I feel that a devise to her would not add to her comfort, but would simply diminish a fund which I desire to create, and which I have created for educational purposes."

The petition alleges that the will was executed upon the date which it bears; that thereafter, on March 21, 1915, Mrs. Coggin died, and the will was duly admitted to probate in the county court of Brown county, and the petitioner, William Poindexter was recognized by the court by proper order as the independent executor of the will and trustee of the estate, and "that he thereafter duly qualified as such, and is now the legally qualified and acting executor under said will," and trustee of the estate, which is now in process of administration under the terms of the will; that one of the devisees named in the will, to wit, Mrs. Dollie Lamont, was living at the time the will was executed, but died before the decease of the testatrix, and that her husband, W. A. Lamont, is living and is her only heir at law, and that the said B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot, brothers of Mrs. Coggin, the testatrix, are her only heirs at law; that Daniel Baker College, W. A. Lamont, and B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot are each and all claiming the benefit of the specific legacy of $5,000 provided in the will for Mrs. Dollie Lamont; that B. C. Lightfoot is also claiming the $10,000 devised by the will for the erection of a tabernacle or coliseum in Coggin Park, in the city of Brownwood, and also the sum of $25,000 to $35,000 devised for the purpose of erecting a chapel on the grounds of Daniel Baker College in Brownwood, to become the property of said college when erected, and also the residue of the estate of Mrs. Coggin mentioned in item 7 of the will, item 7 being the residuary clause therein, and Daniel Baker College being the residuary legatee thereunder, and is seeking to contest and annul the provisions of the will in respect to the matters mentioned; that B. C. Lightfoot is contending that under the law the legacies last mentioned do not vest in the legatees mentioned in the will, but under the law vest in him and T. W. Lightfoot and A. J. Lightfoot, as the only heirs at law of Mrs. Coggin; that T. W. Lightfoot and A. J. Lightfoot have repudiated the will and made an attack thereon, and are contesting the provisions thereof, and by such acts have forfeited the bequests to them under the provisions of the will relating to forfeiture by legatees. The petitioner prays the court "to construe the will and to instruct him in reference thereto as respects his legal duties in paying out, not only the said sum of $5,000 devised to the said Mrs. Dollie Lamont, but in respect to all other devises mentioned in said will, and he further prays this court, after hearing, to instruct him in the premises as to whether the said T. W. Lightfoot and the said A. J. Lightfoot have forfeited their respective legacies by virtue of seeking to annul and make inoperative some of the provisions of said will, and whether he should now pay to them, or either of them, said devises," and that each of the parties interpleaded be required to set up

any claim or claims they have in any of the legacies or devises, and show cause why the will and said estate should not be administered as the will is written.

The respondent W. A. Lamont made no appearance in the cause. The respondents T. W. Lightfoot and A. J. Lightfoot each filed an answer denying that he had repudiated the will or made any attack thereon or contested the provisions thereof or intended to do so, or that he had done any other act or thing which would constitute a forfeiture of the bequest to him under the provisions of the will, and praying the court to construe the will in accordance with the terms thereof as written, and that he be adjudged entitled to receive the bequest as made to him in the will. Each of the other respondents, except B. C. Lightfoot, filed an answer praying the court to enter such decree as will carry out the terms and provisions of the will as written; and the answer of respondent Daniel Baker College contained, in addition, various special exceptions to certain portions of the answer of respondent B. C. Lightfoot, and specific denials of the allegations in his answer of the incapacity of said college to take the legacies bequeathed to it under the will, and that—

"the Daniel Baker College, which answers herein, alone owned, maintained, and operated a school or college in Brownwood, Tex., or elsewhere, under said name or any name similar thereto, at the time of the making of said will, and that it was the purpose and intent of the said Mattie R. Coggin in making said will to devise and give to said Daniel Baker College, and no one else, the property mentioned in said will as being for Daniel Baker College; that, if it be true that more than one charter was ever taken out under the name of Daniel Baker College, or any other name similar thereto, as set out and mentioned in the first amended original answer of the said B. C. Lightfoot, that such charter or charters were in truth and in fact for the use and benefit of the Daniel Baker College which answers herein, and were either an original charter for the use and benefit of said Daniel Baker College, or were intended and were in truth and in fact an amendment of such original charter."

The respondent B. C. Lightfoot filed an answer containing general and special demurrers to the bill of interpleader, and a general denial, and specially pleaded as follows:

"(1) That under a proper construction of the will it was the intention of the testatrix that the lapsed legacy to Mrs. Dollie Lamont should go to the heirs of the testatrix, to wit, himself and his brothers, T. W. and A. J. Lightfoot, and that therefore they were entitled to receive the sum of $5,000 bequeathed to Mrs. Lamont, and, further, that if a proper construction of the will did not disclose such intention upon the part of the testatrix, then this lapsed legacy, under the law, would belong to the estate as property thereof undisposed of by the will, and would descend to the said B. C., T. W., and A. J. Lightfoot as the heirs at law of the testatrix.

"(2) That the bequest of $10,000 for the purpose of the erection of a coliseum or tabernacle in Coggin Park, in Brownwood, Tex., is void for uncertainty, because 'coliseum' and 'tabernacle' are not synonymous words, but have entirely separate and distinct meanings, and are commonly used to mean entirely different things, a 'coliseum' being an amphitheater of the Roman style, designed for secular amusements, and a 'tabernacle' being a building designed for religious worship; and the bequest further is void for uncertainty, because the will does not provide what religious denomination shall be permitted to worship in the said building, nor when or how religious services shall be conducted therein, if the same is to be a tabernacle, and generally does not provide for what purposes said building shall be used, and the bequest further is void for the reason that it violates the Constitution and laws of this state against perpetuities, in that it is not shown in the will that the sum bequeathed or designated shall be used for a charitable purpose.

"(3) That the bequest in item 5 of the will for the sum of $25,000 to $35,000 for the purpose of erecting a memorial chapel on the grounds of Daniel Baker College in Brownwood, Tex., and thereafter to be held and controlled by Daniel Baker College is void for uncertainty, in that there were in existence at the time of the execution of the will, and have since continued to be, four Daniel Baker Colleges incorporated under the laws of the state of Texas, and which come within the description of the Daniel Baker College mentioned in the will, and that therefore it is uncertain to which one of said corporations the testatrix intended to make the bequest, and that there is a latent ambiguity in the will, and, further, that said bequest is void for the reason that a chapel is a building to be used for religious services and other religious purposes, and that each of said corporations, except one, is incorporated for educational purposes, and the other for purposes of profit, and neither has authority under the laws of the state of Texas to own, hold, and conduct a chapel to be used for religious services and for religious purposes, and, further, that said bequest is void for the reason that the same is contrary to the provisions of the Constitution and laws of the state of Texas against perpetuities, in that each of the said corporations is a private corporation incorporated and organized for the purpose of conducting and carrying on only private business of its own and for its own use and benefit and profit, as a private educational institution."

The answer then attacks the seventh paragraph of the will, being the residuary clause thereof, as follows:

"That this defendant also asks the court to hear evidence and construe the seventh paragraph, clause, or item of said will, as he alleges that this item of said will is void for the following reasons:

"(a) That the said item of said will devises all of the remainder of the property of the deceased, Mattie R. Coggin, after paying the prior devises made in prior items, to the trustee herein, the plaintiff, a large portion of which consists of real estate, with authority of the plaintiff, as trustee and executor, to convert said real estate and other property into money and securities, and turn same over to the trustees of Daniel Baker College of the city of Brownwood, or to the Daniel Baker College, and bequeaths all of the remainder of said estate to Daniel Baker College; that the said bequest in item 7 of said will is void for uncertainty, in this, that there were at and before the execution of said will, and have been since, and are now, four Daniel Baker Colleges of Brownwood, Tex.; that on, to wit, the 5th day of April, 1889, there was incorporated or attempted to be incorporated, under and by virtue of the laws of the state of Texas, a corporation known and incorporated and chartered in the name of the Daniel Baker College, located at Brownwood, Tex., for the purpose of the support of an institution of learning, to include the following departments: (1) A classical college depart-

ment; (2) a scientific department; (3) a ladies' literary department; (4) an academic department; (5) a musical conservatory; (6) a conservatory of art—there being six different purposes for which this institution was incorporated, and that the same provides that, 'The affairs of this corporation shall be under the direct control and supervision of said Synod, regularly constituted according to the laws and usages of that body'; that 'is, of the Synod of Texas of the Presbyterian Church of the United States of America, as trustees and directors of said corporation; that said corporation is chartered with an existence of 50 years from the date of the charter, a copy of which charter is made a part of this answer and referred to for the contents thereof. The charter further provides that the same is under the control of said Synod, and that the said corporation shall not do any act or prescribe or adopt any rule or regulation inconsistent with the existing laws of such constitution as said Synod may make and adopt for the management of its property and the regulations of its affairs as it may deem necessary; that the corporation has no capital stock. Reference is made to a copy of the charter, marked Exhibit A, and made a part hereof.

"(b) That on, to wit, the 31st day of December, 1894, there was another Daniel Baker College of Brownwood, Tex., incorporated, or attempted to be incorporated, under and by virtue of the laws of the state of Texas, same being incorporated in the name of Daniel Baker College of Brownwood, Tex., for the purpose of conducting, in Brownwood and other places, an institution of learning of high grade, in which shall be taught all grades of learning usually taught in schools and colleges of higher grades, and shall be open for both sexes, under such rules and regulations as shall be prescribed by the directors of said institution, and names the place and prescribes the term of said corporation to be that of 50 years from its organization, which was on the 31st day of December, 1894; that the same is a private corporation, and that the same provided that its directors of said corporation shall be elected by the Presbytery of Central Texas, and shall be subject to the general control of said Presbytery, and any director may be removed at the pleasure of the Presbytery electing him, a copy of which charter is made a part hereof, and marked Exhibit B, and referred to for the contents thereof.

"(c) That on, to wit, the 23d day of June, 1898, there was granted by the state of Texas another charter to another corporation, incorporated under and by virtue of the laws of the state of Texas, the said corporation to be known as Daniel Baker College of Brownwood, Tex.; that the third charter is for the purpose of maintaining a Christian institution of learning, in which shall be taught all of the branches usually taught in colleges of high grade, in which the Bible shall be used as a text-book, and shall be open to both sexes under such rules and regulations as may be prescribed by the directors of said institution. It is also provided that the interpretation given the Bible in this institution shall be known as Presbyterian or Calvinistic, as is set forth in the Confession of Faith, Longer and Shorter Catechisms of the Westminster Assembly, now the standards of the Presbyterian Church in the United States, and these standards shall be interpreted in their historic sense. To insure this forever, the majority of the trustees and faculty shall be of that belief, and shall be communicating members of the Presbyterian Church. The corporation also provides for a capital stock of $18,000, the same to be divided into 180 shares of $100 each, etc., and provides that the directors of the association or corporation shall be elected by the stockholders from their own number. Said charter also provides that said corporation shall have the power, through its directors, to sell and manage all lands and property outside the college

campus. A copy of which charter is made a part hereof, and marked Exhibit C, and referred to for the contents of the same.

"(d) That on, to wit, the 4th of October, 1907, another charter was granted and issued to another separate and distinct corporation known as the Daniel Baker College, the name of said institution being the Daniel Baker College; that the purpose of the institution is in supplying facilities for high-grade instruction to young men and women in the arts and sciences, and in all branches of learning; that the location and place of business of said institution was Brownwood, Brown county, Tex., and provides that said institution shall extend and exist for the term of 50 years from the 31st day of December, 1907, and further provides that all of the grounds, buildings, real estate, and other property which may be intrusted to it, or come into its possession, all of which buildings, grounds, real estate, endowments, and other property is to be held in trust and to be administered as may be directed by the aforesaid Synod of Texas, in connection with the General Assembly of the Presbyterian Church of the United States. A copy of which charter is made a part hereof and marked Exhibit D, and referred to for the contents of the same.

"Seventh. That said seventh item or paragraph of the will, which is sought to be construed and asked to be construed in this suit by the plaintiff, is void, because of uncertainty, as there are four Daniel Baker Colleges in Brownwood, Tex., incorporated under separate and distinct charters, and each incorporation having a separate and distinct legal existence and for separate and distinct purposes, and that all four of said Daniel Baker Colleges being legal entities and persons separate and distinct from the other, and said clause and item of said will does not state and does not designate to which one of these corporate entities said property is bequeathed and said endowment made, and said item of said will is void for uncertainty.

"Eighth. If this court should hold that said bequest is not void for uncertainty of the devisee, and holds that said bequest is made to any one of said corporations, that the said bequest is and was a perpetuity under the laws of the state of Texas; that said charter granted on the 31st day of December, 1894, is illegal and void, in that it purports that its business shall be, and the purposes for which it is maintained and formed is, the maintenance of an institution of learning of higher grade, in which shall be taught all the branches of learning usually taught in schools and colleges of higher grade, in that said charter violates the laws of the state of Texas in placing the said corporation and its business under the absolute control of the Presbytery of Central Texas; that it is void in that it attempts to creat an educational corporation, but in effect places the same under the control and direction of a religious corporation or denomination when the laws of the state of Texas will not allow the incorporation of an educational institution for religious purposes, and the laws of this state segregate educational, religious, and business corporations, and this charter violates the laws of this state, in that it places an educational institution, which should be controlled by the incorporators named in the act of incorporation under the direction, control, and management, and in the hands of a religious denomination, and is void, as shown by said charter, a copy of which is made a part hereof, and also that the charter granted on the 31st day of December, 1894, is void, for the same reasons and purposes, and that the corporation granted on the 4th day of October, 1907, is also void for the same reasons, and that the last incorporation mentioned above, to wit, the one granted on the 4th day of October, 1907, is void, in that one purpose of said corporation, as stated in said charter, is supplying facilities for a higher grade of instruction to young men and

young women in the arts and sciences, and that the same provides that its business shall be conducted by the Synod of Texas, and shall be run for religious purposes, and not educational purposes, and for the same reasons as to the charter granted in 1889 and 1894 the charter of 1907 is void; that the charter granted in 1898 creates a private stockholding business corporation, and the bequests therein and thereto are void, for the reason that such grant is a perpetuity. Said property becomes the property of the stockholders of said corporation.

"Ninth. That, as is shown above, from the copies made parts of this answer, these separate and distinct corporations incorporated under the name of the Daniel Baker College, of Brownwood, Tex., exist for different periods, one of them existed for 50 years from the ―――― day of ――――, 1889, the second exists for 50 years from the 31st day of December, 1894, and the third exists for 50 years from the ―――― day of ――――, 1898, and that under no construction of this will could the bequest set forth in the seventh item exist for a longer period than the existence and the life of said corporations, and that the said corporations will be dissolved at the termination of their existence; and this defendant asks the court to construe said clause in the light of the said corporations and to determine whether or not said bequest is void, and, if not, then to which of these corporations was the bequest made, if any, and at the dissolution of said corporation this defendant asks the court to construe as to how or to what person said bequest shall descend or invest and to construe that one-third will vest in this defendant.

"Tenth (a). That item or clause 7 of said will is void, because the beneficiary or beneficiaries are too uncertain, and said attempted bequest is void for uncertainty.

"Tenth (b). And this defendant says that, the said corporations being void, that the seventh item of said will is void, and that the bequest there made lapsed, and that this defendant is entitled to one-third of said property so bequeathed in the residuary clause of the will, or at any event that he and his heirs are entitled to one-third of the property bequeathed in said item at the dissolution of whatever corporation this court should hold is entitled to said bequest.

"Wherefore the defendant prays the court to properly construe said will under the light of the facts set forth above, and to determine how each and every one of the above-mentioned bequests shall be paid by the executor, and he asks a full and complete construction of said will."

The petitioner, William Poindexter, executor, etc., filed a supplemental petition by way of replication to the answer of the respondent B. C. Lightfoot, in which, by proper allegations and denials, he joined issue with this respondent as to each of his contentions, and asserted specifically that, if the bequest of $10,000 for the erection of a tabernacle or coliseum in Coggin Park should be void, the same would, under a proper construction of the will, belong to and become vested in the Daniel Baker College and its trustees under the residuary clause in the will, and, further, that if the devise mentioned in paragraph 7 of the will is void, said devise would, under the terms of the will, pass to and vest in Daniel Baker College and its trustees under the residuary clause of the will for the purposes therein named.

The case was tried before the court without a jury, and much evidence introduced in support of the various contentions as made by the pleadings. Upon the record thus made the court entered a judgment and decree, adjudging that the $5,000 bequest to Mrs. Dollie Lamont, and which lapsed upon her death, passed to Daniel Baker College under the seventh item of the will, being the residuary clause thereof, and that the respondents B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot, the heirs of the testatrix, were not entitled to the said bequest or any portion thereof, that all of the provisions contained in the will and all of the bequests and devises therein are in every respect valid and legal, and not subject to any of the objections made thereto by the respondent B. C. Lightfoot, and confirming each of the bequests as to the persons to whom respectively made, and directing the petitioner, as executor and trustee, to carry out and execute the will as written, that the respondents T. W. Lightfoot and A. J. Lightfoot had not forfeited the bequests to them under the provisions of the will, and that each was entitled to the bequest of $5,000 made to him, and adjudging the costs of the proceeding against the respondents B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot. The respondent B. C. Lightfoot duly excepted to the whole of the judgment and gave notice of appeal, and the respondents T. W. Lightfoot and A. J. Lightfoot duly excepted to all portions of the judgment which deny their right to recover any part of the $5,000 bequest to Mrs. Dollie Lamont, and to the portion of the judgment awarding costs against them, and gave notice of appeal accordingly. Upon proper request therefor the court prepared and filed his findings of fact and conclusions of law. These parties duly and properly perfected their appeal by the filing of bonds, and exceptions to the court's findings and conclusions, and assignments of error, B. C. Lightfoot perfecting his appeal separately, and T. W. and A. J. Lightfoot perfecting their appeal jointly. We think it necessary to a proper discussion of the various questions of law presented by the record to set out in full the court's findings of fact, which, in our opinion, are amply supported by the statement of facts sent up with the record, purporting to contain a statement of all the evidence adduced on the trial of the case, and we accordingly do so, these findings of fact being as follows:

"I find that on April 5, 1889, Daniel Baker College was incorporated under the general laws of the state of Texas; that the purpose for which it was incorporated was to support an institution of learning, to include the following departments: (1) Classical; (2) scientific; (3) ladies' literary; (4) academic; (5) musical; (6) art—that by the provisions of the charter the affairs of the corporation were to be under the direct control and supervision of the Synod of Texas of the Presbyterian Church of the United States of America; that in the interim of the meetings of said Synod its authority was vested in a board of 13 trustees, elected by the said Synod, who should act in its place and stead, under the by-laws and constitution pro-

vided by the Synod; that by the provisions of the charter the business of the corporation was to be transacted in the city of Brownwood, Tex., and such other places as may be designated by the Synod. The charter provides that the corporation shall exist for a period of 50 years. It was duly subscribed and acknowledged by three of the trustees therein named and filed in the office of the secretary of the state of Texas April 5, 1889.

"I find that on December 31, 1894, Brooke Smith, Henry Ford, and M. M. Scott, filed in the office of the secretary of state of the state of Texas articles of incorporation; that said articles of incorporation recite: '(1) That Henry Ford, G. T. Storey, J. P. Robertson, J. W. Davis, J. E. McCord, Brooke Smith, M. M. Scott, J. A. Austin, and C. H. Jenkins, associate themselves together under the corporate name of Daniel Baker College of Brownwood, Tex.'— that the purpose of this corporation, as recited in its charter, was 'the maintenance of an institution of learning of high grade, in which shall be taught all branches of learning usually taught in schools and colleges of high grade'; that by the terms of the charter the business of such corporation was to be transacted in Brownwood, Tex., the instruction contemplated to be given at Brownwood, Tex.; that the charter provided that the corporation was to exist for a period of 50 years; the charter provided that the trustees of the corporation and their successors in office shall be the directors who shall consist of not less than 9 nor more than 13 members, their term of office to be determined by the Presbytery electing them; that said corporation has no capital stock, but by the terms of the charter is given power to purchase real estate and other property as may be necessary for the proper conduct of said institution, said property to be held in trust for the Presbytery of Central Texas; that the charter provides that the directors of said corporation shall be elected by the Presbytery of Central Texas, and shall be subject to the general control of said Presbytery, and that any director might be removed at the pleasure of said Presbytery electing him.

"I find that on June 23, 1898, B. T. McClelland, Brooke Smith, R. G. Hallum, subscribed to articles of incorporation that was duly acknowledged by them, and filed by the secretary of state of the state of Texas on July 5, 1898; that said articles of incorporation is headed: 'Amended Charter of the Daniel Baker College of Brownwood, Texas.'

"I find that said articles of incorporation provided substantially as follows: That Josephus Johnson, Joseph Spence, John B. McB. Smith, and M. W. Woodson, Brooke Smith, R. G. Hallum, B. T. McClelland, S. R. Coggin, and T. C. Wilkinson, under the provisions of the Revised Statutes of the state of Texas, incorporated themselves into a voluntary association, for the purpose of maintaining a Christian institution of learning—that by the provisions of the charter the association is to be known as 'The Daniel Baker College of Brownwood, Texas'; that said corporation was formed for the purpose of maintaining a Christian institution of learning, in which should be taught all the branches usually taught in colleges of higher grade, and in which the Bible should be used as a text-book, and the interpretation thereof to be that known as Presbyterian or Calvinistic, as set forth in the Confession of Faith of the Westminster Assembly. It provides that the affairs of said corporation should be conducted by 13 directors, and names the first 13. It provides that the business of the association shall be conducted at Brownwood, Tex. The charter fixes the capital stock of the association at $18,000, to be divided into 180 shares, of the face value of $100 each, the stocks to be transferable, and, when so specified on the face of the stock, redeemable and receivable at par in payment of one-half of all tuition fees. Said

charter provides that the directors shall be elected by the stockholders from among their own number, each stockholder to have as many votes as he owns shares of stock. The charter further provides that the directors shall manage all business and finances of the association, and shall have power to sell and to execute mortgages on all lands and properties, except the College campus, and that by consent of two-thirds vote of the stockholders they may mortgage or sell the college campus. The charter provides that the corporation shall exist for a term of 50 years.

"I find that on the 1st day of October, 1907, R. G. Hallum, Brooke Smith, J. W. Taber, and T. C. Wilkinson executed and acknowledged articles of incorporation, and filed the same in the office of the secretary of state of the state of Texas on October 4, 1907, and that said articles of incorporation recite: 'First. That we, R. G. Hallum, Brooke Smith, J. W. Taber, and T. C. Wilkinson, of Brown county, Tex., duly appointed, together with the others hereinafter named by the Synod of Texas, in connection with the General Assembly of the Presbyterian Church in the United States (commonly known as the Southern Presbyterian Church), as a board of trustees of Daniel Baker College, acting under the provisions of the Revised Statutes of the state of Texas, do hereby form and incorporate ourselves into an educational association under the control and supervision of said Synod, for the purpose of establishing a high-grade institution of learning for young men and women, and to that end and for the purpose of amending the charter hereinbefore granted by the state of Texas to said Daniel Baker College, do hereby adopt the following charter.' The provisions of said charter are substantially as follows:

"First. That said institution shall be known as Daniel Baker College, by which name it shall contract and be contracted with, sue and be sued, and transact all of its business.

"Second. That the purpose of said institution is to provide facilities for high-grade instructions for young men and young women in all branches of learning.

"Third. Said institution shall be located in Brownwood, Brown county, Tex., which shall be its place of business.

"Fourth. Said institution shall exist for a period of 50 years from the 31st day of December, 1894.

"Fifth. The business of said institution shall be conducted by a board of trustees, elected by said Synod of Texas, at any regular meeting of said Synod, numbering not less than 3, nor more than 13.

"Sixth. Said charter here names the 13 who are to act as trustees.

"Seventh. The charter provides that the corporation may own and control the buildings, grounds, and all other real estate used in connection with and tributary to it, together with such endowment and other property as may be intrusted to them or come into its possession, all of which buildings, grounds, or other real estate, endowment, and other property shall be held in trust and to be administered as may be directed by the aforesaid Synod of Texas, in connection with the General Assembly of the Presbyterian Church of the United States.

"I find that some time prior to December 20, 1894, the management of Daniel Baker College, its ownership and control, had changed from the Northern branch of the Presbyterian Church to the Southern branch of said church. This change rendered necessary for the Southern branch of the said church to take out a charter, which it did, as shown by the instrument of 1894.

"I find that subsequent to the charter of 1894, and acting under that charter, what is known as the Southern Presbyterian Church had the actual management and control of the school

situated in Brownwood, Tex., known as Daniel Baker College, and that it had the actual management, control, and use of all the property owned and held by Daniel Baker College under the first charter hereinbefore referred to in these findings, and that subsequent to the taking out of the charter of 1894 Daniel Baker College, as incorporated under the first charter hereinbefore recited, ceased to exist, and has no further connection with, management or control of, any school in Brownwood, Tex., or of the property or assets which belonged to said first corporation.

"I find that the charter dated June 23, 1898, was taken out for the purpose of amending the charter of Daniel Baker College taken out in 1894; that subsequent to the issuance of the charter of 1898 Daniel Baker College as chartered under the charter dated June 23, 1898, ran and continued to operate a school in Brownwood, known as Daniel Baker College, taking over the management and control of the property and assets of the corporation known as Daniel Baker College chartered in 1894, and that subsequent to June 23, 1898, the corporation incorporated under and by virtue of the charter of 1894 ceased to exist, except as it existed in its successor, under the charter dated June 23, 1898; that subsequent to the issuance of the charter of 1898 the school called Daniel Baker College, its property and assets, were under the control and management of the board of directors provided for in the charter of 1898, and the school was thereafter conducted under said charter, and there was no other school known as Daniel Baker College conducted in Brownwood, Tex.

"I find that after the charters hereinbefore referred to, on, to wit, October 1, 1907, the fourth charter was issued, incorporating the school known as Daniel Baker College, or 'The Daniel Baker College'; that this charter was intended as an amendment to the charter of 1898; that since the adoption of the charter of 1907 Daniel Baker College has been managed and controlled by a board of trustees as provided in said charter; that said board of trustees has had the actual charge, control, and management of Daniel Baker College under said charter, and all of its property and assets from that time to the present, and, as such trustees, have continued a college in the town of Brownwood, Tex., under the provisions of said last-named charter, that it is the only school or college by that name situated in Brownwood at this time, or at any time since the adoption of the charter of 1907; and that the administration, buildings, grounds, campus, and dormitories of each and all the institutions chartered under the aforesaid charters have been under the actual management and control of the board of directors provided for in said charter of 1907.

"I find that T. P. Junkin was elected president of Daniel Baker College, as chartered in 1907, and began serving as such president in 1909, and that he continued as president of said institution until 1914.

"I find that S. R. Coggin, husband of Mattie R. Coggin, after the Daniel Baker College passed under the control of the Southern church, was friendly toward it and a substantial supporter of said school; that Mrs. Mattie R. Coggin entertained very kind feelings towards Daniel Baker College after it passed under the control of the Southern Presbyterian Church, and was a liberal supporter of said institution and generous towards it.

"I find that after T. P. Junkin became president of the said school Mrs. Mattie R. Coggin, on various occasions, expressed her intention of providing for said institution in her will, and that T. P. Junkin was president of Daniel Baker College as chartered in 1907, when Mrs. Coggin made her will, and I find that it was the Daniel Baker College of which said Junkin was president that Mrs. Coggin intended as beneficiary under her will.

"I find that Mrs. Mattie R. Coggin departed this life on the 21st day of March, 1915, leaving a will, which was duly probated in the county court of Brown county, Tex., and that William Poindexter, the executor and trustee therein named, qualified as such, and has rendered into court an inventory of said estate; that by the provisions of said will William Poindexter was made independent executor without bond.

"I find that by the provisions of said will Mrs. Mattie R. Coggin disposed of her estate as follows:

"First. She devised her entire estate, real, personal, and mixed, in trust, to William Poindexter, executor and trustee, to be by him held and administered and applied, as provided for in the will, giving him under the will full power to manage, control, sell, and dispose of said estate.

"Second. By the terms of said will Mrs. Mattie R. Coggin devised to her brother T. W. Lightfoot $5,000, to be paid in annual installments of $1,000, and to her sister Mrs. Dollie Lamont $5,000, to be paid in annual installments of $1,000, and to her brother A. J. Lightfoot, $5,000, to be paid in annual installments of $1,000, and to Mary Phillips $1,000, to be paid in annual installments of $200, and to Mrs. May Turner, Mrs. Fannie Camp, and Mrs. Lissa Poindexter each she devised 50 shares of stock in the Coggin National Bank; that by the provisions of the will the executor is directed to erect in Coggin Park, in Brownwood, Tex., a tabernacle or coliseum, at a cost of about $10,-000.

"I find that the will directs said trustee and executor to erect on the grounds of Daniel Baker College, in Brownwood, Tex., a memorial chapel, to be called the 'S. R. Coggin Memorial Chapel,' at a cost of not less than $25,000, and not more than $35,000, said chapel to be owned by said Daniel Baker College; that by the terms of the will the sum of $5,000 was set aside as a cemetery fund for the benefit of Greenleaf Cemetery of Brownwood, Tex., said sum to be placed with the board of trustees named in said will, the principal to be invested by them and the interest to be used for the benefit of said cemetery.

"With reference to the balance of her estate, I find that Mrs. Mattie R. Coggin, by the terms of her will, disposed of the remainder of her property as follows:

"'It is my desire, and I do so will and direct that all the remainder of my property shall be devoted to educational purposes in the city of Brownwood, Tex., and for the purpose of carrying out this desire, I direct that my said executor shall, within five years after the probate of this will, if he shall within said time have converted all of my said estate into money, which he is requested to do, and if not, then, as soon thereafter as possible, convert the remainder of said estate into money and invest same in interest bearing securities, and immediately transfer and endorse said securities to the board of trustees or other persons who may be lawfully in control of Daniel Baker College, of the city of Brownwood, Tex., and authorized to receive same, to be used by said college and its trustees as a permanent endowment fund for the purpose of maintaining a department of agriculture and domestic science, wherein said branches shall be fully and scientifically taught, and to provide free scholarships therein, as hereinafter stated, upon the condition that the sum represented by said securities shall be kept invested in interest bearing securities and the interest thereon only used, and for the following purposes:

"'First: Two-thirds of the annual interest to be used in maintaining said department, such as providing suitable buildings, properly equipping same, paying instructors therein, etc.

" 'Second. For the furnishing or bestowal of scholarships in said department, the remainder of said interest is to be used. Such scholarships are to be bestowed and furnished to boys and young men and girls and young ladies, all of Brown County, Tex., who are worthy and financially unable to pay for such scholarships and to obtain the benefit of such department of instructions. The number of certificates for such scholarships to be bestowed and allowed annually according to rules and regulations adopted by the governing board of said college, and upon further condition that such fund shall be known as the "Coggin Endowment Fund." I qualify the foregoing to this extent: If, when said fund, or the securities representing it, is turned over to said governing board of Daniel Baker College, they have no suitable place provided for giving the course of instruction herein contemplated, and in their judgment it should be deemed wise not to wait until the accumulations of interest are sufficient to provide a suitable place, they may at once use as much as $15,000.00 of said fund or securities towards providing a suitable site and building wherein the department of agriculture and domestic science is to be maintained and wherein the courses of instruction herein provided for are to be given.'

"Said will provides that, if any person named therein as a beneficiary shall seek to annul the will, in whole or in part, or institute any suit or litigation, in order to have it made or rendered inoperative, such person or persons shall take nothing of her said estate, and the amount provided in the will for such person or persons shall be devoted by the executor to the purposes mentioned in item or paragraph 7 of said will.

"I find that such of the Lightfoots named in said will were brothers of said Mrs. Mattie R. Coggin, and by the provisions of the will B. C. Lightfoot, her brother, was left nothing, she assigning as a reason therefor that he had plenty of this world's goods.

"I find that Mrs. Dollie Lamont, one of the legatees named in the will, was a sister of Mrs. Mattie R. Coggin, and that she departed this life about November, 1913, and prior to the death of Mrs. Mattie R. Coggin, leaving neither father nor mother, nor children, or their descendants, her husband alone surviving her.

"I find that B. C. Lightfoot, T. W. Lightfoot, and A. J. Lightfoot were brothers of Mrs. Mattie R. Coggin, and at the time of her death said three brothers were her sole heirs under the law.

"I find that the residuary devisee and legatee in the will of Mrs. Mattie R. Coggin was Daniel Baker College, of Brownwood, Tex., incorporated under the charter issued in 1907, and that that was the institution she intended as residuary devisee and legatee in her will.

"I find that at the time Mattie R. Coggin made her will in question the only college located in the city of Brownwood, and known by the name of Daniel Baker College, or the Daniel Baker College, was the one operating under the charter of 1907, and conducted by the trustee under said charter.

"I find that Daniel Baker College chartered in 1907 conducted religious services and exercises in its chapel in the administration building, and that students were required to attend such chapel services.

"I find that the capital stock of Daniel Baker College as chartered in 1898 was acquired by the Synod of Texas, with the exception of one share, which the holder desired to keep as a keepsake.

"I find that the Daniel Baker College so chartered in 1907 is the legal successor of each and all of the institutions incorporated under former charters mentioned in these findings, and that it was the purpose and intention of Mrs. Mattie R. Coggin to make the Daniel Baker College as chartered in 1907 the beneficiary under her will.

"I find from the will, taken as a whole, that it was the intention of Mrs. Coggin that any lapsed legacy should go to the residuary legatee, the Daniel Baker College, of Brownwood.

"I find that in 1896, a report was made by Daniel Baker College to the Synod of Texas as follows:

" 'Report of Daniel Baker College.

" 'To the Synod of Texas:

" 'The present charter of Daniel Baker College requires that the board of directors shall consist of thirteen members, and that these be chosen from the stockholders. Within the past two years seventy-four of the eighty shares of stock have become the property of the Synod of Texas, thus reducing the number of stockholders to three, the Synod of Texas and two individuals who own the six remaining shares. It is expected that in a very short time these six remaining shares will also be transferred to Synod.

" 'Under these circumstances, and in accordance with the request of the present board of directors, your committee recommends:

" 'First. That Synod appoint a board of trustees of Daniel Baker College.

" 'Second. That said board of trustees be directed to secure a new or amended charter and take charge of the college as soon as the present board of directors shall turn over to them all the eighty shares of stock.'

"Which report was by the Synod adopted.

"I find that Daniel Baker College charged tuition, except to ministerial students and those preparing for the missionary field and children of ministers of all denominations, and that the institution never met current expenses of the school, but that there was an annual deficit during all the time since its organization, and that since 1907 this deficit amounted to from $5,000 to $6,000, which deficit was made up by the church controlling the school at the time, and that said school has never been run for profit.

"I find that none of the legatees named in the will are seeking to break the same, or in any manner seeking to prevent its execution according to the intention of the testatrix.

"I find that Daniel Baker College, as organized under each of the aforesaid charters, was created for the purpose of encouraging and providing a school for higher educational facilities, and not for financial gain or profit."

### Opinion.

Under the foregoing statement, and appellants' assignments of error and brief, several questions are presented to us for determination, and they will be treated as nearly separately as may be.

[1] First. Does the $5,000 bequest to Mrs. Dollie Lamont, which became a lapsed legacy because of the fact that she died prior to the death of the testatrix, fall into the residuary clause of the will, and thereby pass to Daniel Baker College, or does it belong to the estate of the testatrix as property thereof undisposed of by her will, and as to which she therefore died intestate, and, under the law of descent and distribution in this state, descend to her next of kin, to wit, the appellants in this case? It is a practically universal rule that a gift by will, whether of personal or real property, lapses when the legatee or devisee dies previous to the death of the testator, except where changed by statute. 17 Am. & Eng. Ency. of Law, 748, and authorities there cited.

"The liability of a testamentary gift to failure, or, as it is generally termed, lapse, by reason of the decease of its object in the testator's lifetime, is a necessary consequence of the ambulatory nature of wills, which, not taking effect until the death of the testator, can communicate no benefit to persons who previously die." 1 Jarman, Wills (6th Ed.) p. 307.

The rule is well settled that, in the absence of statutory provision, under a will containing a general residuary clause, a bequest of personal property which, valid when made, fails for any reason, such as the death of the legatee prior to the death of the testator, and thereby becomes what is technically termed a "lapsed legacy," falls into the residuary clause and passes to the residuary legatee, unless a different intention is clearly expressed in the will. There is no general statutory provision on the subject in this state. This rule has been differently expressed as often as different judges speaking for the various courts and different text-writers have attempted to put it in words. And it is but the long-established common-law rule. Wherever found, it rests upon the principle that effect will always be given to the intention of the testator as expressed in the will. We find the rule announced in several decisions of our own courts; the rule as announced in each differing from that as announced in the others only in the manner of expressing it. In the case of Moss v. Helsley, 60 Tex. 436, 437, decided by the Commission of Appeals, and the opinion adopted by our Supreme Court, in which was involved the question of the proper disposition of a special bequest that was void because the legatee was actually dead at the time of the execution of the will, without the knowledge of the testator, we find this expression:

"Ordinarily at common law, in case the special bequest is void, the residuary legatee would take when the terms of the residuary clause were sufficiently comprehensive. * * * The question then arises as to what disposition shall be made of a void devise or bequest under our system. It seems that this should be determined by the intention of the testator, which intention is to be ascertained in the same manner as in other matters relating to his will."

In the case of Lenz et al. v. Sens et al., from our Galveston Court of Civil Appeals, reported in 27 Tex. Civ. App. 442, 66 S. W. 110, a will containing a residuary clause was before the court for construction. Among other things, the question of the proper disposition of a bequest of personal property which had failed because of the death of the legatee prior to the death of the testatrix, was involved. In dealing with this question the court used this language:

"The rule of law controlling the disposition of the lapsed legacy to Anna Kalbfleisch is well settled. A lapsed legacy falls into the residue of the estate, and goes to the residuary legatee, unless it should appear from a proper construction of the will that the testator meant that the residuary gift should take only a limited effect. Moss v. Helsley, 60 Tex. 437; Schouler, Wills, § 519. The intention of the testator, as gathered from the will, must control in the construction of a will."

In the case of Coleman v. Jackson et al, 126 S. W. 1178, from our Court of Civil Appeals at San Antonio, a will containing special bequests of both real and personal property, and also containing a residuary clause, was before the court for construction. It was necessary to determine, among other questions, the proper disposition of a bequest of personal property and devise of real estate to the same person, which had failed because of the death of the legatee-devisee previous to the death of the testator. The court thus expressed itself:

"The general rule, which arises from the fact that a will does not take effect until the death of the testator to vest any interest, is that, if the devisee or legatee dies before the testator, the devise or legacy lapses, and continues a part of the estate of the testator after his death unaffected by his will, unless otherwise provided by statute or included in the residuary clause of the will. Clarence Edward Coleman, the devisee of the land and the legatee of the watch involved in this suit, having died before the testator, leaving no child or children, no statute of this state prevented the lapse of the devise and legacy to him. At common law, when a devise of land failed because of lapse or because it was void ab initio, the property was not comprised in a general or residuary devise, but devolved on the heir as real property of which deceased was intestate. As the common law is the rule of decision of this state, and there is no modification by statute, in so far as affects this case, of the common-law rule, it must appear from the face of the will that the testator intended to prevent the lapsing of the devise upon the death of the primary devisee before his. Such intention must be declared in an unequivocal manner, by designating what person or persons he wishes to take the devise in case of the death of the primary legatee. No such intention is apparent from the will under which the defendant claims the property in controversy. On the contrary, such an intention is clearly negatived in the residuary clause above quoted; for it comprised and made the defendant the residuary devisee and legatee only of property that should remain on hand at the death of the testator not designated in his will. While there is a presumption that a testator intends to dispose of all his estate, and not to die intestate as to any of his property, such presumption, however strong it may be, will not authorize the making of a new will by the court or the inclusion of other property that cannot be brought within the terms of the one made by the testator."

In each of the two cases last above referred to writ of error was denied by our Supreme Court. (We wish it understood that we do not here decide whether there is any difference in this state in the rule as to a lapsed bequest of personal property and a lapsed devise of real property. There is an apparent conflict on this point between the opinions in the cases of Moss v. Helsley and Coleman v. Jackson, supra. A determination of this question is not necessary to a decision of this case.)

Turning now to other jurisdictions, we find the following: In Lovering v. Lovering, 129 Mass. 97, is this expression:

"A general residuary gift carries all property which is not otherwise disposed of by the will, and includes all lapsed legacies and all void legacies. * * * In this case the residuary gift is of 'all the rest, residue and remainder of my es-

tate, real and personal, of every nature and description.' The fact that he specifies certain remainders and reversions as included within this general description does not limit or narrow it."

In Re L'Hommedieu, 32 Hun (N. Y.) 10, we find the following statement of the rule:

' "It is a settled rule of construction that a residuary clause carries all which is not legally disposed of by the will, unless a contrary intention is manifested from the will itself. Such an intention cannot be deduced from the mere absence of words or that the testator fails to provide for the contingency upon which the lapse was occasioned. A testator is supposed to have given away from the residuary legatee for the sake of the particular legatee."

In Lamb v. Lamb, 131 N. Y. 234, 30 N. E. 134, it is said:

"Where the language of the residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction. It prevents intestacy, which it is reasonable to suppose testators do not contemplate, and if the mind is left in doubt upon the whole will, as to the actual testamentary intention, a broad rather than a strict construction seems more likely to meet the testamentary purpose, because such a clause is usually inserted to provide for contingencies or lapses, and to cover whatever is left, after satisfying specific and special purposes of the testator manifested in the other clauses of his will."

In Thayer v. Wellington, 9 Allen, 283, 85 Am. Dec. 753, the Massachusetts court speaks thus:

"In all these cases of lapsed or void legacies, or a legacy that fails for want of using proper language to create the same, or to designate the legatee, all of which are uniformly held to pass to the residuary devisee, the testator had no purpose in his mind at the time of executing his will to pass such an estate to the residuary devisee. 'It is not necessary that the testator's mind should be active in including it.' Goodright v. Downshire, 2 Bos. & P. 600. The contrary intention of the testator spoken of in the books as that which will prevent such legacy going to the residuary devisee is something more than the fact that the testator supposed that he had made a valid legacy to some one of a portion of his estate, but which the court held void and inoperative."

The Supreme Court of Arkansas, in the case of Galloway v. Darby et al., 105 Ark. 558, 151 S. W. 1014, 44 L. R. A. (N. S.) 782, Ann. Cas. 1914D, 712, expresses itself thus:

"It is argued that the language of the will prevents the operation of the residuary clause as a general one, and evinces a specific intention on the part of the testatrix not to include lapsed legacies. Counsel invoke a strict construction of the language of the residuary clause on the ground that a presumption should not be indulged of an intention on the part of the testator to cut the heirs off from the lapsed devises, unless the intention is made clear by the language of the will. While it is sometimes said that an intention to disinherit lawful heirs is not to be presumed, in the absence of clear and explicit language to that effect, yet there are other presumptions not to be overlooked. In the construction of wills there is always a presumption against partial intestacy, unless such an intention clearly appears from the language used in the instrument. * * * The presumption against intended intestacy leads to a liberal, rather than to a restricted, construction of the residuary clause in the will, in order to prevent partial intestacy. * * * The words of

the residuary clause 'not hereinbefore specifically devised' do not overcome the presumed intention to include lapsed devises. That phrase must be construed with reference to the time that the will speaks, and, when so considered, it refers to valid devises, or those which finally take effect under the will, but does not exclude from the residuum lapsed devises or those which are void when the will takes effect." (In this case it is held specifically that in the state of Arkansas there is no difference in the rule as to lapsed bequests of personal property and lapsed devises of real estate.)

In Lombard v. Boyden, 5 Allen (Mass.) 249, it is stated:

"The reason usually ascribed for the common-law rule that a lapsed legacy passes into the residuum and goes to the residuary legatee is that a residuary clause is understood to be intended to embrace everything not otherwise effectually disposed of, and is supposed to take a particular legacy away from the residuary legatee only for the sake of the particular legatee. Hence upon failure of the particular intent, effect will be given in the construction of the will to the general intent, unless, upon proper construction of the will, this presumption in favor of the general intent is negatived, in which case the rule does not apply, and the lapsed legacy will be treated and considered as intestate estate."

In the case of Langley v. Weschester Trust Co., 180 N. Y. 326, 73 N. E. 44, it is held:

"Where the testator disposes of a portion of his property by different devises and bequests, and subsequently directs that whatever moneys may remain in the hands of the executor after the payment of the foregoing bequests are to be divided and paid out to the residuary legatees, it is clear that he intended the specific bequests to take effect, but it is equally clear that he intended making a testamentary disposition of all of his estate, and such intention is effectuated only by carrying into the residuary estate any prior ineffectual bequests."

In Tindall v. Tindall, 24 N. J. Eq. 512, it is stated:

It has been said "that the residuary legatee is entitled as well to a residue caused by a lapsed legacy, or an invalid or illegal disposition, as to what remains after payment of debts and legacies. The only exception to the rule is that, where the words used show an intention on the part of the testator to exclude from the operation of the residuary clause certain portions of the estate, such intention, as gathered from the whole will, must not be defeated."

In Sanford v. Blake, 45 N. J. Eq. 248, 17 Atl. 812, is this expression:

"A residuary bequest of [the testator's] personal estate carries not only everything not in terms disposed of, but everything that * * * turns out not to be well disposed of. A presumption arises in favor of the residuary legatee against every one except the particular legatee; for a testator is supposed to have" made the gift "away from the former only for the sake of the latter."

In Reeves v. Reeves, 5 Lea (Tenn.) 653, the rule is expressed thus:

"The presumption is that the testator did not intend to die intestate as to any portion of such property, and" that he "took away" a part thereof "from the residuary legatee only for the sake of a particular legatee."

In Leake v. Robinson, 2 Meriv. 363, is this language:

"It is immaterial how it happens that any part of the testator's property is undisposed of,

whether by the death of the legatee or by an erroneous and consequent illegal bequest; either way it is a residue; there is something upon which no other disposition of the will effectually operates. It may in words have been given, but if not effectually given, it is, legally speaking, undisposed of and consequently included in the denomination of residue."

In King v. Woodhull, 3 Edw. Ch. (N. Y.) 79, this language is used:

"Reference will be had to the context of the will to ascertain, not so much whether it was intended that the residuary legatee should receive the benefit of a lapsed bequest, as whether the words used are so strong and expressive as necessarily to exclude property which falls by lapse, and to limit the bequest of the residue to a particular residue instead of permitting it to operate as a general residuary bequest. To exclude what may fall by lapsed or invalid disposition from the gift of the residue, the will must contain special words clearly limiting the gift of the residue, and showing the intention of the testator to exclude such portions of his estate as may fail to pass under previous clauses of the will."

The effect of the holdings in Re Benson, 96 N. Y. 499, 48 Am. Rep. 646, and Re Upham, 127 Cal. 90, 59 Pac. 315, is that, where a residuary bequest is not circumscribed by clear expressions in the will, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapsed or invalid disposition, or other accident.

In Sorrey v. Bright, 21 N. C. 113, 28 Am. Dec. 584, the holding is that:

"Very special words are necessary, showing the intent to be clear, that the particular estate comprised in the ineffectual legacy shall not pass under the residuary clause."

In Cook v. Lanning, 40 N. J. Eq. 369, 3 Atl. 132, it is stated:

"The testator did not die intestate as to any part of his estate." Where "by the residuary clause he gives all the 'balance' of his 'estate' " to designated persons, since "the term 'estate' is the most comprehensive one that he could have used. Standing without qualification, it includes all his [the testator's] property."

In Adams v. Bass, 18 Ga. 130, it is held that:

"Where a bequest of money for a particular purpose is invalid, it falls into the residue and goes to the residuary legatees, under a legacy of the proceeds of the sale of property remaining after the invalid bequest had been carried out."

A residuary clause which bequeaths "the remainder of my property" is held to include all prior bequests which may, for any reason, fail or prove ineffectual in Re Isaac (1905) 1 Ch. 427, 74 L. J. Ch. N. S. 277, 92 L. T. N. S. 277, and to the same effect is Milford v. Reynolds, 16 Sim. 105, 17 L. J. Ch. N. S. 237, 12 Jur. 197.

Turning now to the text books we find the following: In 2 Jarman, Wills, p. 716, the author says:

"A residuary gift of personal estate carries not only everything not in terms disposed of, but everything that in any event turns out to be not well disposed of. A presumption arises for the residuary legatee against every one except the particular legatee; for a testator is supposed to give his personalty away from the

former only for the sake of the latter. It has been said that, to take a bequest of the residue out of the general rule, very special words are required, and accordingly a residuary bequest of property 'not specifically given,' following various specific and general legacies, will include specific legacies."

In 18 Am. & Eng. Encl. Law, 724, the rule, sustained by a long list of adjudged cases, is thus stated:

"The residuary clause passes all the property of the testator that is not otherwise disposed of by the will, unless the words used show an intention to exclude from the operation of the residuary clause some part of the estate; it being the rule that a residuary clause will be liberally construed in order to prevent intestacy. This includes property acquired after the will was made, if it appears that the testator intended his will to operate on after-acquired property, and legacies and devises that lapsed or otherwise failed for any reason."

In 1 Underhill on Wills, § 464, is this statement:

"The rule is that the testator's intention is to be ascertained from the whole will. If, therefore, the testator in the introduction expressed an intention of disposing of all of his estate, as when he says, 'I give and dispose of all my worldly goods,' it should be considered. The presumption arises that, having the disposition of his whole estate in view, he did not intend to die intestate as to any part of it. If his subsequent language may be construed in either of two ways, by one of which a complete disposition will be made of his whole estate, and by the other only a partial disposition will be made, resulting in a partial intestacy, the introductory statement pointing to a complete disposition ought to be considered, and that sense adopted which will result in a disposition of the whole estate. Hence it follows that language which in a general or residuary clause may not alone be sufficiently conclusive to dispose of all the property of the testator may have its meaning enlarged to correspond with an intention shown in the introductory clause."

In 2 Redfield on Wills, p. 116, we find the following:

"The courts have, for a long time, inclined very decidedly against adopting a construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator; for the fact of making the will raises a very strong presumption against any expectation or desire on the part of the testator of leaving any portion of his estate beyond the operation of his will."

In the note to Galloway v. Darby, as reported in 44 L. R. A. (N. S.) 782, cited above, there is the following statement of the general rule, in support of which a long list of authorities is cited, containing adjudicated cases from about 30 states of the Union and a great number of English cases:

"Unless a contrary intention appears, for reasons subsequently stated more at length, it is a presumption of law that a testator, by incorporating in his will a general residuary clause, evidences his intention not to die intestate as to any of his personal property, and it is presumed that he took the particular legacy from the residuary legatee only for the benefit of the particular legatee. Giving effect to these presumptions or inferences as to the intention of the testator, which are, of course, prima facie merely, the cases very generally hold that, if a legacy of personal property lapses or proves ineffectual, the

subject-matter thereof will inure to the benefit of the general residuary legatee, if there is one, and not to the testator's next of kin or heirs at law."

In some few jurisdictions there is a difference between a lapsed legacy and a void legacy; it being held that the general rule as to lapsed legacies stated above does not apply to void legacies, and that the latter passes to the next of kin. The great weight of authority, however, is to the effect that no such difference exists, and that a void legacy falls under the same rule as a lapsed legacy.

So we find that at least wherever this question has arisen in the courts, and whenever it has been treated by text-writers, the polar star guiding the judicial mind and the author's thought has been the intention of the testator as evidenced by the will itself, considered in all of its parts, viewed from its four corners. The established general rule that the lapsed legacy falls into the residuary clause, stated above, was evolved from the effort to ascertain from the will the testator's intention. It originated from the idea that the mere making of a will evidenced the intention of the testator to make disposition of all his property, and the inclusion of special bequests and a general residuary clause evidenced the further intention to make the residuary legatee the principal beneficiary and to take from him the amount specially bequeathed only for the benefit of the special legatee, as well as the intention to make sure that he should not die intestate as to any of his property, and also the intention to embrace in the residuary clause everything not otherwise effectually disposed of. And there entered into the formation of the idea originally the further thought that the intention to include ineffectual legacies is presumed, since a presumption exists in favor of the residuary legatee against every person except the particular legatee. And we find further that it is universally held that the general rule fails when the will, considered in all its parts, evidences an intention upon the part of the testator to exclude lapsed legacies from the residuum, or rather an intention that such shall not pass to the residuary legatee, or, to put it differently, an intention on the part of the testator to limit and circumscribe the residuary clause.

Applying to this case the general rule above stated, keeping in mind the principle and reasons upon which it is based, as hereinbefore outlined, the conclusion is inevitable that the lapsed legacy of $5,000 to Mrs. Lamont falls into the residuary clause and passes to or devolves upon the residuary legatee, Daniel Baker College. And in reaching this conclusion we have adhered strictly to that other well-established rule by which we are always to be guided in seeking the intention of a testator, so well expressed by Mr. Williams in his excellent work on Executors:

"The question in expounding a will is not what the testator meant, but what is the meaning of his words. The use of the expression that the intention of the testator is to be the guide, unaccompanied with the constant explanation that it is to be sought in his words, and a rigorous attention to them, is apt to lead the mind insensibly to speculate upon what the testator may be supposed to have intended to do, instead of strictly attending to the true question, which is what that which he has written means. The will must be expressed in writing, and that writing only is to be considered. And in construing that writing the rule is to read it in the ordinary and grammatical sense of the words, unless some obvious absurdity or some repugnancy or inconsistency with the declared intention of the writer to be extracted from the whole instrument should follow from so reading it." 2 Williams, Ex'rs p. 327.

Every feature of this will of Mrs. Coggin that has any bearing upon this question, viewed from the standpoint of the general rule and the reasoning of the authorities referred to herein, points to the intention of the testatrix to include lapsed legacies, and particularly this one, in the residuary clause. There is no clause or portion of the will which, to our minds, would remotely indicate a contrary intention. The will contains several special bequests and three gifts of specific sums of money for as many specified charitable purposes and a general residuary clause. The instrument shows an unmistakable intention upon the part of the testatrix to dispose of all her property, for in the preamble, after the usual testamentary expressions as to sound mind and a knowledge of the uncertainty of life, it is stated, "And desiring that the worldly possessions which have been intrusted to me shall be devoted in the future to worthy objects of my own choosing," and in the residuary clause, which follows all the special bequests and all other provisions for disposition of portions of the property for specific purposes, she provides for the disposition of "all the remainder of my property," and also in said clause uses the expressions "all of my estate" and "the remainder of said estate." She gave $45,000 to comparatively small charitable purposes and only $31,000 to all her kindred. She gave the bulk of her property to the residuary legatee, as the approximate value of the estate is $250,000, and the total of all special bequests and small charitable gifts, outside the chapel fund, is $46,000. The special bequest to Mrs. Lamont, $5,000, is comparatively small. Each other special bequest is likewise comparatively small. The residuary bequest is stated in the will to be for educational purposes in the city of Brownwood, Tex., through the medium of Daniel Baker College and its trustees, and in the preamble of the will, when speaking of the disposition she wishes to make of her estate, she uses the expression "worthy objects," and in clause 11 she states:

"It is due to my friends to state that the design and purpose of this will, in most of its features, are but the expressions of the will and

purpose of my beloved husband, S. R. Coggin, deceased, and that I have not knowingly gone counter to his desires in any respect. He sincerely desired that his estate, for which he labored through a long lifetime and amid dangers and privations of a frontier life, should not be wasted, but should do good. And with this spirit of his, strengthened by a similar purpose of my own, I ask my said executor, who may act under the provisions of this will, to carry out and effectuate the same in the confident belief that such will be done."

And the evidence shows that the husband was friendly and gave his support to education, and particularly through Daniel Baker College. Taking the will as a whole, and the rest of the record in the case, the necessary conclusion is that Mrs. Coggin derived her estate, or the major portion thereof, from her husband. In paragraph 4 of the codicil to the will she says:

"I have not made any provision in this will for my beloved sister-in-law, Mrs. Bettie L. Taber, and I desire to here state that this is not due to any lack of affection for her, or appreciation of her friendship, but knowing that she is so comfortably fixed in life, and that her years will be few at best, I feel that a devise to her would not add to her comfort, but would simply diminish a fund which I desire to create and which I have created for educational purposes."

The will was made in 1912. Mrs. Lamont died in 1913. Mrs. Coggin, the testatrix, died in 1915. The natural presumption is that, if Mrs. Coggin had desired the amount which was to have gone to Mrs. Lamont to go to her brothers, the appellants, she would have made a codicil to that effect. She provides in the will that any special bequests forfeited by contest of the will, etc., shall go to the residuary legatee, and in this connection she stated that she had dedicated the greater portion of her estate to this residuary legatee. She made a small special bequest to each of her next of kin, except one of her brothers, the appellant, B. C. Lightfoot, to wit: her two other brothers, T. W. and A. J. Lightfoot, who are the other appellants herein, and her sister, Mrs. Lamont, as well as making small special bequests to several others of her kindred, and then following the specifications of these bequests in the will, she says:

"I have not given anything to my brother, B. C. Lightfoot, and I desire to state that by not giving him any part of my estate, that I do not cherish him any less, nor have less affection for him than any other of my kindred, but inasmuch as he is well provided for with this world's goods, anything I might give would simply be adding to the abundance which he already has."

Counsel for appellants argues that the provision in the will to the effect that the chapel fund devised to Daniel Baker College shall be forfeited and passed to the next of kin of testatrix in the event of destruction of the chapel by fire and failure of the college to use the proceeds of insurance policy thereon for rebuilding the same evidences an intention to exclude lapsed or forfeited bequests from the residuary clause. A sufficient answer to this argument is found in the fact that under the provisions of the will any and every other forfeited special bequest

goes to the residuary legatee. But it seems to us that, as suggested by counsel for appellee, the sole purpose of this forfeiture was to force the college to use the insurance money for rebuilding the memorial chapel to her husband, instead of doing what it would be likely to do in the absence of some such provision, viz. abandon the chapel idea and use the money for some purpose of more direct benefit to it.

[2] Second. Is the $10,000 bequest for the erection of a "tabernacle" or "coliseum," on the grounds of Coggin Park, in the city of Brownwood, void for uncertainty? Appellant contends that it is uncertain on two grounds: First, because the will says the fund shall be used for the erection of a "tabernacle," or "coliseum," and the two words mean two entirely different kinds of buildings, and the two buildings are intended and used for two entirely different purposes, a tabernacle being for religious worship, and a coliseum being an amphitheater of the Roman style, to be used for the purpose of carrying on shows or exhibitions of different character; and, second, because the will does not provide what denomination or church is to use the building, if a tabernacle, nor when nor how services are to be conducted therein. The context, or rather the provisions and directions, in this item of the will, completely answer this question on both grounds, and utterly refute the contention of appellant. It is true that the technical meaning of the word "tabernacle" is different from the technical meaning of the word "coliseum," both as to character of construction of the building and as to the use for which intended, and it is further true that the general rule of construction of written instruments, including wills, is that words used therein must be construed according to their technical meaning; but the exception to this rule is equally well established, that the technical meaning will not be attacked where there are qualifying words or explanatory provisions in the context, which show that a technical meaning was not intended, or the peculiar circumstances under which the words were used demonstrate clearly that they were meant otherwise than in the technical sense. The will provides in the paragraph containing this gift that certain persons therein named shall "decide on plans for said tabernacle or coliseum," and that the executor shall proceed to the erection of this building "according to said plans." Also in said paragraph it is stated:

"This building is to be tasty, commodious, and of modern design, and suitable for the innocent pleasures and comfort of people resorting to said park, and is to be designed to make the park attractive and minister to the enjoyment of those who may resort to it."

It is shown by the record that the park referred to was a public park in the city of Brownwood, named Coggin Park in honor of the husband of the testatrix. And we repeat

that the intention of the testator is the determining factor always. Unquestionably the intention of Mrs. Coggin, as gathered from the language of the will, was that a building should be erected sufficient and suitable for public gatherings of all proper kinds, and that the architecture thereof should be determined by the persons named in the will to decide upon plans.

Moreover, if we take the words "tabernacle" and "coliseum" in their technical sense, the determination of which should be chosen would lie with the persons whose duty it was to "decide on plans."

[3] Third. Is the said $10,000 bequest for the erection of a tabernacle or coliseum in Coggin Park void because contrary to the provisions of the Constitution of Texas against perpetuities? We answer this question in the negative. If this gift creates a perpetuity, a question which we do not determine, then it does not fall within the inhibition of perpetuities under our Constitution, because a gift to a municipality of ground for a park for public use is a charitable gift. In re Bartlett, 163 Mass. 509, 40 N. E. 900; Burr v. Boston, 208 Mass. 537, 95 N. E. 208, 34 L. R. A. (N. S.) 143; Lester v. City of Jackson, 69 Miss. 887, 11 South. 114. And a charitable gift does not fall under the ban of our constitutional provision on this subject, as will hereinafter be more particularly shown, and if grounds for a park can be given, certainly money for the purpose of erecting a building on the grounds of the park can be given.

[4] Fourth. Is the gift of $25,000 to $35,000 to Daniel Baker College for the erection of a memorial chapel to be used for religious services and purposes void for uncertainty as to amount? We think not. The testatrix specifically states in the will that her executor shall erect such chapel "at a cost of not less than $25,000.00, nor more than $35,000.00, it being my idea that it should cost about $30,000.00, but I give my executor the right to vary from this sum within the above limits." This absolutely relieves the matter of such uncertainty as the law will take note of. See Speer v. Colvert, 200 U. S. 132, 26 Sup. Ct. 201, 50 L. Ed. 403, and Keith v. Scales, 124 N. C. 497, 32 S. E. 809. In the case first cited it is said:

"Courts are always reluctant to hold a bequest void for uncertainty, and they only do it when actually compelled to do so by the language used."

[5] Fifth. Is the gift of $25,000 to $35,000 to Daniel Baker College for the erection of a memorial chapel to be used for religious services void, because said college, being incorporated for educational purposes under the general laws of Texas, has no authority to own and control a building used for the purpose of conducting religious services? We answer this question in the negative. There are many authorities holding that a devise for a chapel is a good charitable gift. In re

Bartlett, 163 Mass. 509, 40 N. E. 900, and authorities cited. And certainly no person in this country in this enlightened age, where and when liberty of conscience and of religious belief and of religious practices is unbounded and universal, will say that those having in charge the direction of the affairs of an institution in which young men and young women are received for instruction and education in secular branches shall not provide that these youths may attend services for the worship of Almighty God, and own and maintain suitable buildings for such purpose, even though such institution be incorporated under the laws of the state.

The other objections urged by appellant to this item will be covered by what is said hereafter in dealing with the objections to the residuary bequest.

[6, 7] Sixth. Is the residuary bequest to the Daniel Baker College, under the seventh clause or item of the will, void for uncertainty, because there were four corporations of the same name and description as named and described in the will? We answer this question in the negative. It is unmistakably shown by the record that the corporation intended to be named as the legatee by the testatrix was the corporation then existing and operating under the charter of 1907. Appellant contends that there is nothing in the record except parol evidence by which this conclusion could be reached, and that this parol evidence was inadmissible because its only purpose and effect was to vary and contradict the terms of the written instruments as contained in the four charters, and the will itself shows that the corporation which the testatrix had in mind was the one incorporated under the charter of 1898, because the testatrix designates the corporation named by her in her will as the one having grounds in the city of Brownwood, and the corporation incorporated under the charter of 1898 was the only one owning such grounds. The contention as to the parol evidence cannot be sustained. As pointed out heretofore in this opinion, parol evidence is always admissible to identify a devisee or legatee when, under the terms of the will, there is ambiguity on this point; and the burden of appellant's contention is that the will is ambiguous on this point. As to the contention that the will itself shows that it was the corporation of 1898, because it was the only one owning ground, we answer that the record clearly shows that the corporation of 1907 was the successor of the corporation of 1898, or that the charter of 1907 was an amendment to, or a substitute for, the charter of 1898. Here again we meet a contention of appellant to the effect that each of these charters is a complete and perfect instrument within itself, showing upon its face that it is an independent charter, and that it is not an amendment to, or a substitute for, any other charter, and that the

evidence which was introduced for the purpose of showing that the charter of 1907 was intended as an amendment to, or a substitute for, the charter of 1898, and that the corporation of 1907 was the successor of the corporation of 1898, was inadmissible, because its purpose and effect was to vary and contradict the expressed terms of these two written instruments. We answer this by statement of the well-settled rule that parol evidence may be looked to to determine whether one charter is an amendment of a previous charter, and also whether one corporation is the successor of another corporation, for the purpose of clearing a doubt as to the identity of the beneficiary of a charitable gift. First Society v. Brownell, 5 Hun (N. Y.) 465; Miller v. English, 21 N. J. Law, 322; Grand River College v. Robertson, 67 Mo. App. 335; Sprigg v. Western Union Tel. Co., 46 Md. 73; Sumrall v. Ins. Co., 40 Mo. 27; Ins. Co. v. Beckmann, 47 Mo. 97; St. Phillip's Church v. Zion Church, 23 S. C. 314; Trustees v. Moody, 62 Ala. 389; Higgins v. California Petroleum & Asphalt Co. et al., 122 Cal. 373, 55 Pac. 155.

At least parol evidence may be had to determine whether all the properties of a corporation have been lawfully taken over by a subsequently formed corporation, and the last-named thereby becomes the successor of the other as to property rights and holdings and possession. And the record in this case shows clearly that the corporation in existence and actively operating at the date of the making of the will was the corporation organized under the charter of 1907, and that it pretended to be the owner of and was asserting the ownership of all of the properties theretofore owned by the corporation organized under the charter of 1898, and was in possession thereof, and was operating and controlling the institution known as Daniel Baker College, whose entire equipment, consisting of buildings, etc., was located upon the grounds, and the only grounds, which had been owned by the corporation existing under the charter of 1898. But appellant contends that the charter of 1907 could not lawfully be an amendment of the charter of 1898, and the corporation under the 1907 charter could not lawfully be the successor of the corporation under the 1898 charter, because the former is a charitable educational institution, and the latter is a corporation organized for profit. This contention is answered in a subsequent portion of this opinion, where we deal with the question as to whether the corporation of 1898 is a charitable institution.

[8] Seventh. Was the corporation organized under the charter of 1907, or was either of the four corporations (conceding that there were four corporations) violative of our laws because chartered, organized, and conducted for two distinct purposes, to wit, for religious purposes and for educational purposes? We would satisfy ourselves by simply answering "No" to this question, except for the fact that appellant has laid so much stress upon this point. Each of the charters specifically states that its purpose is educational, the language of the 1907 charter, in stating the "purpose," being "the supplying of facilities for high-grade instructions for young men and young women in the arts and sciences and of all branches of learning." The "purpose" in each of the other charters is equally as plainly set forth, and in some of them the "purpose" is even more extensively set forth as to its being educational. The charter of 1907, as well as the other charters, provides it shall be under the control of a religious denomination, specifying the denomination. The mere fact that an institution of learning, operated under a charter granted by the state, is controlled and operated by a religious denomination, does not mean that it is organized and operated for religious purposes, when the charter states plainly that it is organized for educational purposes, and the facts show, as in this case, that it is conducted and operated for those purposes. State v. Westminister College, 175 Mo. 52, 74 S. W. 990; Washington College v. Duke, 14 Iowa, 20; Price v. Maxwell, 28 Pa. 33.

[9] Eighth. Appellant contends that the gifts under the will to Daniel Baker College must be construed to be to the corporation incorporated under that name under the charter of 1898, because the will shows conclusively that the gift was to the Daniel Baker College, which then owned grounds in the city of Brownwood, and the corporation organized under the charter of 1898 was the only corporation by that name, or association by that name, which owned such grounds at the time of the making of the will, and thereupon appellant contends that, the bequest being to the corporation of 1898, it is void, as being contrary to the constitutional provisions of this state against perpetuities, in that the corporation of 1898 is not a charitable institution, but is a business corporation organized for the purpose of profit. This objection has been fully met by the holding hereinbefore that the gift under the will was to the corporation of 1907, but in view of the strenuous manner in which counsel makes this contention, we will deal with it under the theory that counsel is correct in his position, that the gift was to the corporation chartered and existing under the charter of 1898, and that no other person or corporation was intended. We then face the question: Was the bequest void as being a perpetuity? It is well settled that a gift to a charity does not fall within the inhibition against perpetuities under our Constitution. Bell County v. Alexander, 22 Tex. 350, 73 Am. Dec. 268; Paschal v. Acklin, 27 Tex. 174; Griffin v. Graham, 8 N. C. 96, 9 Am. Dec. 619; State v. McGowen, 37 N. C. 9.

It then remains to be determined whether the corporation created by the charter of 1898

was a charitable institution. Plaintiff's reasoning is this: That under our statutes there are three different kinds of private corporations which may be chartered: First, religious; second, corporations for charity or benevolence; and, third, corporations for profit; that the purpose of the corporation was the third above named, to wit: "for profit," in this, that it had a stated amount of capital stock divided into a specified number of shares of par value a specific amount; that this stock was subscribed and paid in and represented by money or other property of value; that there is a board of directors; that the directors are elected by the stockholders from among their number, each stockholder being entitled to as many votes as the number of shares owned by him; that the corporation is under the absolute control of the board of directors thus elected; that its purpose was education and a charge was to be made for each person entering the institution, and dormitories were erected and conducted on the grounds and a charge made for each person living therein. The great weight of authority, if not the uncontradicted rule, is that an institution whose main purpose is educational is a charity, although it might be also profit-making. The distinguishing feature rendering the institution one of charity is that its main purpose is for education rather than for profit; in other words, the question always is: What is the main purpose of the institution? Santa Clara Academy v. Sullivan, 116 Ill. 375, 6 N. E. 188, 56 Am. Rep. 776; Dexter v. Harvard College, 176 Mass. 192, 57 N. E. 372; Carter v. Whitcomb, 74 N. H. 487, 69 Atl. 779, 47 L. R. A. (N. S.) 733; Butterworth v. Keeler (N. Y.) 114 N. E. 804; Re Robinson's Will, 203 N. Y. 380, 96 N. E. 927, 37 L. R. A. (N. S.) 1023; Re McDowell's Will (N. Y.) 112 N. E. 178; Alfred University v. Hancock, 69 N. J. Eq. 470, 46 Atl. 178; Taylor v. Bryn Mawr College, 34 N. J. Eq. 101; Darly's Estate, 208 Pa. 59, 57 Atl. 180; Wilson v. Bank, 164 Iowa, 402, 145 N. W. 948, Ann. Cas. 1916D, 481; Hospital v. Thompson, 116 Va. 101, 81 S. E. 14, 51 L. R. A. (N. S.) 1025; Phillips v. Harrow, 93 Iowa, 92, 61 N. W. 437; State v. Ausmus (Tenn. Ch. App.) 35 S. W. 1022; Minns v. Billings, 183 Mass. 126, 66 N. E. 595, 5 L. R. A. (N. S.) 686, 97 Am. St. Rep. 420; Downes v. Hospital, 101 Mich. 555, 60 N. W. 43, 25 L. R. A. 602, 45 Am. St. Rep. 427; Cunningham's Will, 206 N. Y. 601, 100 N. E. 438; Donohugh's Appeal, 86 Pa. 307; Powers v. Hospital, 109 Fed. 295, 47 C. C. A. 122, 65 L. R. A. 372; Schloendorff v. Hospital, 211 N. Y. 125, 105 N. E. 93, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581; Maxcy v. Oshkosh, 144 Wis. 238, 128 N. W. 899, 31 L. R. A. (N. S.) 787; Richards v. Wilson (Ind.) 112 N. E. 780; Ackerman v. Fichter, 179 Ind. 392, 101 N. E. 493, 46 L. R. A. (N. S.) 225, Ann. Cas. 1917D, 1117; Buchanan v. Kennard, 234 Mo. 117, 136 S. W. 415, 37 L. R. A. (N. S.) 993, Ann. Cas. 1912D,

50; Washburn College v. O'Hara, 75 Kan. 700, 90 Pac. 235; Russell v. Allen, 107 U. S. 163, 2 Sup. Ct. 327, 27 L. Ed. 397.

Under the record in this case the main purpose of the corporation or institution as organized and conducted under the charter of 1898 was educational. The charter itself says:

"This association is formed for the purpose of maintaining a Christian institution of learning, in which shall be taught all the branches usually taught in colleges of high grade, in which the Bible shall be used as a text-book, and which shall be open to both sexes, under such rules and regulations as may be prescribed by the directors of this institution."

The record shows that the corporation under operation of its business never realized any profit, but that its expenses always exceeded its revenues, and that it was never operated with a view of making profits, and that its stockholders never looked for nor expected to receive any dividends on their stock or any other material profits.

[10] But at last it could profit the appellants in this case nothing, and they would not be heard to complain, if it should be held that the gift to Daniel Baker College is void for any reason, because the gift in the will is a charity, for the reason that it is made for the purpose of giving education to the youth of Brown county, and the manner in which this purpose shall be carried out is specifically stated in the will, and Daniel Baker College is merely the medium, under the provisions of the will, by which the charity is to be dispensed, or, in other words, Daniel Baker College is merely the trustee, and the youths of Brown county are the beneficiaries. Therefore the will creates a charitable trust, and if for any reason Daniel Baker College cannot take as trustee, the trust will not fail, because equity will not suffer it to fail for want of a trustee. Under the universal rule in this country and in England, when a charitable trust has been created and there is a failure of the trustee for any reason, a court of equity, having jurisdiction, will take charge of the trust and administer the same under a trustee appointed by it. Paschal v. Acklin, 27 Tex. 174; Bell County v. Alexander, 22 Tex. 350, 73 Am. Dec. 268; Gidley v. Lovenberg, 79 S. W. 836; Eccles v. Trust Co., 90 Conn. 592, 98 Atl. 130; Winslow v. Stark (N. H.) 97 Atl. 980; Vidal v. Girard, 2 How. 127, 11 L. Ed. 205; Russell v. Allen, 107 U. S. 173, 2 Sup. Ct. 327, 27 L. Ed. 397; Seminary v. Morgan, 171 Ill. 444, 49 N. E. 516; Green v. Trust Co., 134 Ky. 311, 120 S. W. 283, 20 Ann. Cas. 861; Willis v. Alvey, 30 Tex. Civ. App. 96, 69 S. W. 1036; Inglish v. Johnson, 42 Tex. Civ. App. 118, 95 S. W. 560.

Counsel for both appellants and appellees have filed very comprehensive briefs and arguments treating in extenso every phase of the various questions raised by the record. Also the case was fully presented by oral argument for both sides on submission in this

court. We feel that nothing has been left undone by counsel to aid the court in arriving at a proper determination of the case as presented on the record here.

No reversible error has been pointed out, and therefore the judgment of the trial court is affirmed.

Affirmed.

JENKINS, J., did not sit in this case.